PEOPLE v BENNETT

Docket No. 134266. Submitted February 4, 1992, at Grand Rapids. Decided August 4, 1992, at 9:25 A.M. Leave to appeal sought.

David A. Bennett, a Saginaw Chippewa Indian, was charged in the Isabella Circuit Court with operating a motor vehicle while under the influence of intoxicating liquor, impaired driving, and driving with a suspended license. The court, Paul F. O'Connell, J., quashed the information, ruling that the court lacked jurisdiction because the alleged violations took place within the Isabella Indian reservation, an area under the jurisdiction of the federal government. The prosecution appealed.

The Court of Appeals *held:*

The Isabella reservation was established under a treaty that set apart for the Chippewas' exclusive use all unsold lands within six townships in Isabella County. The defendant was arrested in an area within the reservation that had been sold to an individual before the adoption of the treaty. That area therefore was not part of the reservation under the terms of the treaty and was subject to state jurisdiction.

Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Larry J. Burdick,* Prosecuting Attorney, and *Diane M. Kuhn,* Assistant Prosecuting Attorney, for the people.

*Daniel R. O'Neil,* for the defendant.

Amicus Curiae:

*Derril B. Jordan,* for Saginaw Chippewa Indian Tribe of Michigan.

Before: MacKenzie, P.J., and Weaver and R. B. Burns,* JJ.

Per Curiam. Defendant, a member of the Saginaw Chippewa Indian tribe, was arrested in Chippewa Township, Isabella County, for operating a motor vehicle while under the influence of intoxicating liquor, third offense, MCL 257.625(6); MSA 9.2325(6). Defendant was also charged with impaired driving, third offense, MCL 257.625b(4); MSA 9.2325(2)(4), and driving with a suspended license, second offense, MCL 257.904(3); MSA 9.2604(3). Defendant moved in circuit court to quash the information on the ground that the state court lacked subject-matter jurisdiction because he was arrested on land within the boundaries of the Isabella Indian reservation. The court granted defendant's motion to quash. The prosecution now appeals as of right the August 31, 1990, order quashing the information. We reverse and remand.

The sole issue before us is whether defendant was in Indian country. Indian country is defined by 18 USC 1151, in pertinent part, as:

(a) all land within the limits of any Indian reservation under the jurisdiction of the United States government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation . . . .

The circuit court found that "Leaton Road is a right-of-way running through the Isabella Indian Reservation, and is therefore, by definition, 'Indian Country.' Since federal and tribal jurisdiction are exclusive in Indian Country, it is axiomatic that

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

state criminal jurisdiction over an enrolled member of the tribe in Indian country, including rights-of-way therein, is void, according to the plain meaning of the statute."

The prosecution asserts that defendant was not in Indian country when he was arrested. Rather, the prosecution contends the location where defendant was arrested is outside the areas that are Indian country.

The prosecution first argues that land patented to non-Indians before the effective date of the treaties was never Indian country as defined by statute.

The Isabella reservation was established by the Treaty of October 18, 1864. That treaty provided, in part, that:

> Article II. In consideration of the foregoing relinquishments, the United States hereby agree to set apart for the exclusive use, ownership, and occupancy of the said . . . Chippewas of Saginaw, Swan Creek, and Black River, all of the unsold lands within the six townships in Isabella County, reserved to said Indians by the treaty of August 2d, 1855, aforesaid, and designated as follows, vis:
>
> The north half of township fourteen, and townships fifteen and sixteen north, of range three west; the north half of township fourteen and township fifteen north, of range four west, and townships fourteen and fifteen north, of range five west.

The prosecution argues that any lands within the six described townships that were sold before the execution of the 1864 treaty were never part of the original Isabella reservation and, therefore, could not be considered Indian country for jurisdictional purposes. The prosecution has documented the fact that the area where defendant was ar-

rested was patented to non-Indians in July 1857 pursuant to cash purchases made in 1854.

Indian treaties must be construed "so far as possible, in the sense in which the Indians understood them, and in a spirit which generously recognizes the full obligation of this nation to protect the interests of a dependent people." *Choctaw Nation of Indians v United States,* 318 US 423, 432; 63 S Ct 672; 87 L Ed 877 (1943). "The language used in treaties with the Indians should never be construed to their prejudice. If words be made use of which are susceptible of a more extended meaning than their plain import, as connected with the tenor of the treaty, they should be considered as used only in the latter sense." *Worcester v Georgia,* 31 US (6 Pet) 515, 582; 8 L Ed 483 (1832). Ambiguities are to be construed in favor of the Indians. *Oneida Co v Oneida Indian Nation,* 470 US 226, 247; 105 S Ct 1245; 84 L Ed 2d 169 (1985). Courts may not, however, "ignore plain language that, viewed in historical context and given a 'fair appraisal,' . . . clearly runs counter to a tribe's later claims." *Oregon Dep't of Fish & Wildlife v Klamath Indian Tribe,* 473 US 753, 774; 105 S Ct 3420; 87 L Ed 2d 542 (1985).

In this case, the parties have not presented evidence of the negotiations surrounding the formation of the Treaty of October 18, 1864. However, examining the treaty itself, it appears that the parties intended for the previously sold lands to be excluded from the reservation, because the Chippewas were granted all the "unsold" lands within the six townships. Given the plain language of the treaty, and the lack of evidence to the contrary, we believe the Chippewas would have understood at the time of treaty formation that they were not permitted to settle on or own any

lands previously patented to individuals. *Choctaw Nation of Indians v United States, supra.*

Therefore, defendant was not on a right of way passing through Indian country when he was arrested, and he was subject to criminal prosecution in state court.

Our resolution of this issue renders moot the prosecution's second assignment of error, that lands patented to Indians and subsequently sold to non-Indians are not Indian country.

We reverse the circuit court's order of August 31, 1990, and remand for trial on all charges. We do not retain jurisdiction.